122    223
125    204
122    223
s81NW    92

W. & A. McARTHUR CO. *v.* OLD SECOND NATIONAL BANK
OF BAY CITY.

BILLS AND NOTES — AGENT FOR COLLECTION — BILL OF LADING —
CONSIGNMENT TO SHIPPER—PRESUMPTIONS.

When a consignor forwards for collection, without other in-
structions, a sight draft, to which is attached a bill of lading
showing a consignment to himself, indorsed by him in blank,
the presumption is that he does not intend credit, but that it
is a cash transaction, requiring payment by the drawee of
the draft before delivery to him of the bill of lading; which
presumption is not negatived by the fact that the draft is
entitled to three days' grace, and is considered in law as a
time draft.

Case made from Bay; Maxwell, J.   Submitted October
4, 1899.   Decided December 12, 1899.

*Assumpsit* by the W. & A. McArthur Company,
Limited, against the Old Second National Bank of Bay
City, to recover the amount of a draft sent to defendant
for collection.   There was a judgment for plaintiff on ver-
dict directed by the court, and defendant assigns error.
Affirmed.

*C. L. Collins*, for appellant.

*McDonell & Hall* (*Watts S. Humphrey*, of counsel),
for appellee.

LONG, J.   The plaintiff is in the milling business, hav-
ing its office and place of business at Cheboygan, this
State.   The First National Bank of Cheboygan does busi-
ness there.   The defendant does a banking business at
Bay City.   The plaintiff, at Cheboygan, on March 5,
1898, shipped a car load of wheat to Bay City, which had
been sold by it to J. N. McDonald & Son, of Bay City.
Upon such shipment it received from the railroad company
a bill of lading showing that the wheat was consigned to

itself at Bay City. Plaintiff indorsed the bill of lading in blank, made a draft upon J. N. McDonald & Son, and delivered the draft, with the bill of lading so indorsed, to the Cheboygan bank for collection. The Cheboygan bank forwarded the draft, with the bill of lading so attached, to the defendant, at Bay City, with the following letter:

"CHEBOYGAN, MICH., March 7, 1898.
"OLD 2D, Bay City.
   "*Dear Sir:* Inclosed as stated below for collection.
                  "Yours respectfully,
                      "A. W. RAMSAY, Cashier.
   "J. N. McDonald & Son. No P. $600. B. L. attached. Hold for arrival of goods, if necessary."

The draft was dated March 5, 1898, made payable at sight, and indorsed by the Cheboygan bank: "Pay to Old Second National Bank, or order." The bill of lading was in the usual form. In the body of the bill, under the name of the consignee, was a statement to the railroad company: "Notify J. N. McDonald & Son, Bay City, Mich." It described one car of wheat. No other information or direction was given to the defendant, and it appears that the defendant had no notice of the dealings between McArthur & Co. and J. N. McDonald & Son, except such as could be inferred from the papers above set forth. The car load of wheat arrived in Bay City March 9th, and the railroad company, acting upon a waybill, which is a duplicate of the bill of lading, notified J. N. McDonald & Son of its arrival. The letter of instruction, draft, and bill of lading reached the defendant March 7th, and on that day was presented to J. N. McDonald & Son; but, the wheat not having arrived then, nothing was done. On March 11th the bank presented the draft to J. N. McDonald & Son, who wrote their acceptance thereon, and the bill of lading was delivered to them by the defendant. They presented the bill of lading, with the indorsement in blank of McArthur & Co. thereon, to the railroad company, who immediately delivered to them the car load of wheat. It appears that J. N. McDonald & Son were in-

solvent, and the draft was never paid. This suit was brought against the defendant to collect the amount of the draft, on the ground that the bank had been negligent in delivering the bill of lading to J. N. McDonald & Son upon the acceptance of the draft, and without the draft being first paid. There is no contention upon the facts. Upon the statements made by counsel in the court below, the court directed the verdict in favor of the plaintiff, and entered judgment thereon for the amount of the draft and interest, amounting to $630.30. Defendant assigns error.

It is the claim of defendant's counsel that, under the circumstances above stated, it was the duty of the defendant bank to deliver the bill of lading to the drawee upon acceptance of the draft. This claim is based upon the proposition that a sight draft is a time draft, as it is entitled to three days of grace, and that, the consignor having indorsed the bill of lading, and sent the same forward with this time draft, with no instruction to hold the bill of lading until the draft was paid, such action conclusively negatives the presumption of intention to have the bill held until the draft was paid. It is conceded that such presumption might arise from the fact that the shipment was made to the shipper as consignee, but it is urged that such presumption is conclusively rebutted by the above facts.

It is undoubtedly well settled that a sight draft is entitled to three days of grace. Story, Bills, § 342; 2 Edw. Bills & N. (3d Ed.) § 714; *Cribbs* v. *Adams,* 13 Gray, 597; *Lucas* v. *Ladew,* 28 Mo. 342; *Thornburg* v. *Emmons,* 23 W. Va. 334; *Walsh* v. *Dart,* 12 Wis. 635; *Green* v. *Raymond Bros.,* 9 Neb. 295. It is also well settled that a blank indorsement upon a bill of lading is sufficient to pass the legal title to the goods, and that a delivery of goods by a common carrier to the consignee thereof is made at the peril of the carrier, unless, when made, the consignee surrenders the bill of lading either made to or indorsed to himself. Coleb. Coll. Sec. § 381; *Hobart* v. *Littlefield,* 13 R. I. 341; *Gates* v.

*Railroad Co.*, 42 Neb. 379; *Weyand* v. *Railway Co.*, 75 Iowa, 580 (1 L. R. A. 650, 9 Am. St. Rep. 504). But we cannot agree with the contention of counsel for defendant that the fact that the bill of lading was indorsed in blank, and forwarded with the draft, under the circumstances here, negatives the presumption that the bill of lading was to be held until the draft was paid. The draft was sent to the defendant, as stated in the letter accompanying, for collection. The car load of wheat was not consigned to J. N. McDonald & Son, but to the plaintiff, who was the shipper. For the purpose of permitting J. N. McDonald & Son to at once get the wheat into possession, the bill of lading was indorsed, so that, when the draft was paid, there was nothing further to do by the defendant but to deliver the bill of lading to J. N. McDonald & Son, and the title to the wheat would at once pass to them.

Counsel, however, contends that the case is no different than as though the wheat had been consigned to J. N. McDonald & Son. There is, however, this difference: In case the consignment had been made direct to J. N. McDonald & Son, and no directions given for the collection of the draft, no presumption would have arisen that it was intended as a cash transaction, and the title not to pass until payment; but, the property being consigned to the shipper himself, showing that something further was to be done by him to pass the title, the presumption was that it was a cash transaction; and we think this presumption was not negatived by the fact that the draft was entitled to three days' grace, and considered in law as a time draft. We are satisfied that the transaction did not import a sale of the goods upon credit.

In *Security Bank of Minnesota* v. *Luttgen*, 29 Minn. 363, it appeared that a merchant, having received an order for goods from a foreign correspondent, shipped the goods by a common carrier, taking bills of lading, by the terms of which the goods were deliverable at their destination to the shipper or his order. The merchant then drew bills of exchange for the price of the goods on the

person ordering them, payable to the merchant's own order 30 days after sight.   Attaching the bills of lading, indorsed in blank, to the drafts, and indorsing the latter in blank, the merchant had the drafts discounted at the bank, it being agreed in parol with the bank that the bills of lading should not be delivered until the drafts were paid.   These drafts were sent forward by the bank to its correspondent, who presented them for acceptance, and they were duly accepted.   Upon the acceptance of the drafts, and without payment, the bills of lading were delivered to the drawee, and the goods thus passed into his hands.   The drawee shortly after this became insolvent, and the drafts were not paid.   Action was commenced to recover against the drawer upon his indorsement of the drafts.   The defense urged was that the bills of lading were to be treated as security for the payment of the drafts, and that the plaintiff had no right to deliver them to the drawee until such payment.   It was held that, independent of the parol agreement, and considered as a matter of merely legal interpretation, the transaction did not import a sale of the goods on credit, or determine that the drawee was entitled to the bills of lading upon his acceptance of the drafts, and without payment.   The court said:

   " The taking of bills of lading making the goods deliverable to the order of the shipper, rather than to the person for whom they are ultimately destined, has been considered 'almost conclusive' proof of an intention on the part of the consignor to retain the *jus disponendi,* although subject to be rebutted;" citing Benj. Sales (3d Ed.), 382, 400; *Dows* v. *National Exchange Bank,* 91 U. S. 618; *Farmers & Mechanics' Nat. Bank* v. *Logan,* 74 N. Y. 568; *Seymour* v. *Newton,* 105 Mass. 272; *Jenkyns* v. *Brown,* 14 Adol. & E. (N. S.) 496; *Mason* v. *Railway Co.,* 31 U. C. Q. B. 73.

   In the case of *Bank* v. *Cummings,* 89 Tenn. 609 (24 Am. St. Rep. 618), in an opinion written by Mr. Justice Lurton, it was held, upon a very similar state of facts as found in the Minnesota case, that, where bills of lading attached to time drafts left with a bank for collection are

taken to the order of the vendor and drawer, instead of to the vendee and drawee, such fact is, when not rebutted by evidence to the contrary, almost conclusive to show that the bills were not to be surrendered to the vendee until the drafts should be paid, and is sufficient to require the bank to hold the bills until such payment. This is the rule recognized by Elliott in his work on Railroads (volume 4, § 1426).

Counsel for defendant cites many cases[1] which he claims have a tendency to support his contention. Those cases are readily distinguishable from the present and from the Minnesota and Tennessee cases. We do not deem it necessary to discuss the cases cited, as we are satisfied that a draft drawn as this was, and accompanied by a bill of lading showing that the shipper had consigned the goods to himself, is a clear indication that the shipper did not intend to extend credit.

The court very properly directed the verdict in favor of plaintiff. The judgment must be affirmed.

GRANT, C. J., MONTGOMERY and HOOKER, JJ., concurred. MOORE, J., did not sit.

[1] Viz.: *Lanfear* v. *Blossman*, 1 La. Ann. 148 ( 45 Am. Dec. 76 ); *Moore* v. *Louisiana Nat. Bank*, 44 La. Ann. 99 ( 32 Am. St. Rep. 332 ); *Nat. Bank of Commerce* v. *Merchants' Nat. Bank*, 91 U. S. 92; *Woolen* v. *Erie Bank*, 12 Blatchf. 359; *Marine Bank* v. *Wright*, 48 N. Y. 1.