## SOUTHERN RAILWAY COMPANY *v.* CUNNINGHAM.

1. Where suit was brought in this State on account of a personal injury occurring in the State of Alabama, and no statute of that State was pleaded or shown, this court will presume that the common law was of force there.

2. At common law common carriers of passengers were bound to use extraordinary diligence ; and injury to a passenger in consequence of the breaking or failure of a vehicle, roadway, or other appliances of the carrier, owned or controlled by it and used by it in the transit, or the manner of their operation, raised a presumption of negligence against it.

3. A common carrier of passengers is bound to use extraordinary diligence, no matter what means of conveyance may be employed, whether a passenger-train, a freight-train, or a " mixed " train. The standard or degree of diligence required is the same, namely, that extreme care and caution which very prudent and thoughtful persons exercise under like circumstances. But the acts which extraordinary diligence requires to be done are not the same under all circumstances.

4. Extraordinary diligence, as applied to the movement, starting, or stopping of " mixed " trains, and the jolts or jerks occurring in connection therewith, is that extreme care and caution which very prudent and thoughtful persons would use with a like train under like circumstances.

5. In determining whether extraordinary diligence has been used by the company, the nature and character of the train, whether a passenger-train, a freight-train, or a " mixed " train, is a circumstance for the consideration of the jury ; and on request to charge the jury in regard to considering the character of the train, the presiding judge should not omit all reference thereto.

6. If a passenger, injured by a negligent jerk occurring in the operation of a railway train, by the exercise of ordinary care could have avoided the consequences to himself of the railroad company's negligence, he would not be entitled to recover. The character of the train and its method of operation, known to the plaintiff, are circumstances for the consideration of the jury in determining whether he exercised ordinary care or not. But a request to charge which would make the exercise of ordinary care on the part of a passenger dependent entirely on what was usual or customary with the railroad, without reference to his knowledge of it, or to the circumstances of the particular case, was properly refused.

7. If a passenger was injured by the negligence of the railroad company, he was bound to lessen the damages as far as practicable by the use of ordinary care and diligence. But it would be error to charge that it was his duty to do some particular thing for that purpose.

8. Grounds of a motion for new trial, based upon the refusal of the judge to allow certain questions to be asked, furnish no reason for reversal, where it does not appear what answers were expected thereto.

Argued April 20, — Decided May 15, 1905.

Action for damages. Before Judge Hamilton. City court of Floyd county. August 24, 1904.

Cunningham brought suit against the Southern Railway Company, seeking to recover for an injury to himself. He alleged, that he took passage upon a passenger-train of the defendant from a point in this State to a place in Alabama; that when the

train reached a station in Alabama it was pulled into a side-track to allow a train coming in the opposite direction to pass; that after going into the side-track, the conductor and other servants of the defendant announced that the train would stand there for half an hour; that plaintiff arose and walked along the aisle to a tank of drinking water which was located at the end of the car, and was kept there for the use of passengers; that while in the act of drinking, without notice, warning, or signal of any kind the car was moved suddenly and with great and unusual violence backward, and by said violent motion plaintiff was thrown to the floor and injured. The defendant denied the substantial allegations of negligence. It further pleaded, that the train on which the plaintiff was riding was a mixed train, composed partly of freight-cars and partly of passenger-cars; that this fact was known to plaintiff, and he assumed all risk incident to traveling on such a train; and that his injury, if any, was in consequence of the necessary movements of said train, which were carefully made, or of negligence on his part, or of unavoidable accident; also that no greater jolts or jars were made than are usual and necessary in handling such trains, and that the movements were such as were usual and necessary in doing so.

The jury found for the plaintiff. The defendant moved for a new trial. The motion was overruled, and it excepted.

*Shumate & Maddox* and *G. A. H. Harris & Son*, for plaintiff in error. *R. T. Fouché* and *M. B. Eubanks*, contra.

LUMPKIN, J. (After stating the facts.) 1, 2. Plaintiff in error insists that as the injury took place in the State of Alabama, and no statute of that State is pleaded or shown, the law of this State requiring extraordinary diligence from carriers of passengers did not apply; that such was not the rule at common law, and that no presumption of negligence arose from proof of injury. The injury having occurred in the State of Alabama, and no statute of that State having been pleaded or shown, the presumption is that the common law is of force there. *Selma R. Co.* v. *Lacy*, 43 *Ga.* 461. At common law, common carriers of freight were insurers, and no excuse availed them in cases of loss, unless it was occasioned by the act of God or the public enemies. In determining the status of carriers of passengers the courts distinguished their position from

that of common carriers, and held that they were not insurers of the safety of their passengers, but were liable for negligence causing injury.    As to the measure of diligence required of them, various forms of expression were used.    In some cases it was said that they were bound to exercise the highest degree of care and skill; in others, that they were answerable for the smallest negligence; in still others, for the least failure in duty; and various other forms of words were employed.    A consideration of these decisions will show that the common-law courts required of a common carrier of passengers a degree of diligence which was fully equal to extraordinary diligence; and it has generally been held that they are bound to use extraordinary diligence.    2 Redfield on Railways (6 ed.), § 192 and notes; 1 Fetter on Carriers of Passengers, § 8, p. 13; Thompson on Carriers of Passengers, 200.    On page 206 of the authority last cited, the author expresses the opinion that the modern English rule appears to be that carriers of passengers are only bound for the care and caution which may be reasonably expected to be used by reasonable men; reducing the standard to ordinary or reasonable care.    But Mr. A. C. Freeman in an elaborate note to the case of Ingalls v. Bills, 43 Am. Dec. 355, 357, argues with great force that there has been no change in the English rule on the subject.

At the time of the adoption of the common law into this State, the authorities cited will show, extraordinary care was required on the part of common carriers of passengers, and it has been often held that proof of injury to a passenger in consequence of the breaking or failure of a vehicle, roadway, or other appliances owned or controlled by the carrier or used by it in making the transit, or the manner of their operation, raised a presumption of negligence against the carrier.    This construction was placed upon the common law by the Supreme Court of this State, in Central Railroad v. Freeman, 75 Ga. 331, 338, and in Augusta & Summerville R. Co. v. Randall, 79 Ga. 304 (9), 314.    In the latter case it is said (p. 314): "This presumption that, where the plaintiff has shown that he was a passenger and was hurt or damaged by the running of the railroad company's trains or machinery, the company was negligent, is a common-law presumption.    It is no new thing because it was not enacted in this State until the act of 1855.    It obtained at common law, and had been the law of Eng-

land and of this country all the time." It has been held that if
there was a diversity in the decisions of different courts on this
subject, the construction heretofore placed upon the common law
by this court would prevail. *Pattillo* v. *Alexander*, 96 *Ga.* 60;
*Krogg* v. *Atlanta and West Point Railroad*, 77 *Ga.* 202 (2). But
contrast *Atlanta Ry.* v. *Tanner*, 68 *Ga.* 384 (3); *Anderson* v.
*Walton*, 35 *Ga.* 205. See also Tanner's executor *v.* L. & N. R.
Co., 60 Ala. 621. In the case of *Savannah Ry.* v. *Williams*, 117
*Ga.* 420, however, Lamar, J., says, that the presumption as con-
tained in the statute of this State is more extensive than it was
at common law.

3–5. "The degree of diligence due from a common carrier [of
passengers] to a passenger is extraordinary, no matter what means
of conveyance may be employed." *Ball* v. *Mabry*, 91 *Ga.* 782;
Thompson on Carriers of Passengers, § 20, p. 234; I. & G. N. Ry.
Co. *v.* Irvine, 64 Tex. 529 (3); Fetter on Carriers of Passengers,
§ 16, p. 32; Edgerton *v.* New York etc. Railroad, 39 N. Y. 227;
Dunn *v.* Grand Trunk Ry. Co., 58 Maine, 187, 196; Indianapolis
R. Co. *v.* Beaver, 41 Ind. 493; Chicago & Alton R. Co. *v.* Flagg,
43 Ill. 364; Ohio & Miss. R. Co. *v.* Dickerson, 59 Ind. 317; In-
dianapolis & St. Louis R. Co. *v.* Horst, 93 U. S. 291, 296; Ohio
& Miss. R. Co. *v.* Muhling, 30 Ill. 9; Schilling *v.* Winona etc.
Railroad (Minn.), 68 N. W. 1083. Extraordinary diligence, as the
term is defined and used in this State, means "that extreme care
and caution which very prudent and thoughtful persons exercise
under like circumstances." *East Tenn., Va. & Ga. Ry. Co.* v.
*Miller*, 95 *Ga.* 738; Civil Code, § 2899. The standard or degree
of diligence required of a carrier of passengers with respect to a
passenger is, therefore, extraordinary diligence. But what acts
will meet this requirement must necessarily depend upon the cir-
cumstances of the particular case. See *Macon Street Ry. Co.* v.
*Barnes*, 113 *Ga.* 218, 219. What extraordinary diligence in
running a freight-train would require to be done may differ from
what would be required in operating a passenger-train. Thus it
has been held that a passenger who sees fit to travel on a freight-
train takes the risk of the usual and necessary jolts properly
incident to handling and running such trains. *Ball* v. *Mabry*, 91
*Ga.* 781 (4), supra; *Crine* v. *E. T. Ry. Co.*, 84 *Ga.* 651; *Central
Railroad* v. *Smith*, 76 *Ga.* 209. A freight-train is primarily for

the carriage of freight. What is called a "mixed" or accommodation train is somewhat different. It is partly used for the transportation of freight, but also has a passenger car or cars attached to it, and is held out to the world as a regular means for transporting passengers. This does not change the rule announced above, that in all cases extraordinary diligence is required of a carrier of passengers. But in determining what acts were necessary to fulfil this measure of diligence in the particular case, and whether such diligence was used, the nature and character of the train, its known uses, and the necessary incidents of its operation are circumstances for the consideration of the jury. In *Chattanooga R. Co.* v. *Huggins*, 89 *Ga.* 495 (5), it was held, that "A railway company, in coupling a freight-train to a passenger-car having passengers already in it to be carried by the train, is bound to exercise extraordinary diligence,— that is, such diligence as very prudent persons would use with a like train under like circumstances." In *Macon R. Co.* v. *Moore*, 108 *Ga.* 84, 89, the rule in regard to mixed trains is thus announced: "A passenger who enters such a mixed train, with knowledge of its peculiar structure and movements, assumes the risks consequent upon its unavoidable jerks when starting; and the degree of diligence he should exercise should have reference to such necessary movements of the train. But he also has the right to rely on an exercise of extraordinary diligence by the railroad company in its management of the train in such a way as to avoid danger of injury to its passengers; and when he has used ordinary diligence for his own safety under the circumstances, the company is liable for damages to him resulting even from its slight neglect." Compare *Central R. Co.* v. *Summerford*, 87 *Ga.* 626, 630; Oviatt *v.* Dakota C. Ry., 43 Minn. 300.

Some of the requests to charge in the case now under consideration were based upon the decision in *Crine* v. *Ry. Co.*, supra. They constituted only a part of the charges which were approved in that case, and omitted any reference to the necessity for the use of extraordinary diligence. Exception was taken, however, to the fact that the presiding judge gave no charge in respect to the character of the train, and its usual and necessary modes of operation, in submitting to the jury the question of whether or not the defendant used extraordinary diligence, although requested

to charge on that subject.   His attention was called to it by the requests, and it was error to entirely disregard it.

6. The court instructed the jury, in effect, that if by the exercise of ordinary care the plaintiff could have avoided the consequences to himself of the defendant's negligence, he would not be entitled to recover.   Ordinary care, as has been said above in regard to extraordinary care, may require one thing at one time and under one set of circumstances, and a different thing at another time and under different circumstances.   One of the requests to charge was defective in that it made the question of what would be ordinary care on the part of the plaintiff dependent entirely upon the character of the train and the manner in which it was run, operated, and handled at stations where it was usual to receive and discharge freight.   The character of the train and its method of operation, as known to the plaintiff, were circumstances for the consideration of the jury in determining whether he exercised ordinary care or not.   But ordinary care is a matter affecting the individual who must use it, and it will not do to say that the standard of diligence on his part depends alone upon the character of the train, or what the usual mode of operating it is, without regard to his knowledge or whether the jerk was necessary or usual.

If the plaintiff was injured by the negligence of the defendant, he was bound to lessen the damages as far as practicable by the use of ordinary care and diligence.   Civil Code, § 3802.   But it would have been error to charge the jury that it was his duty to do some particular thing for that purpose, or to say to them that if he could have " mitigated his suffering by having an operation performed, or other surgical treatment, and could have relieved himself partly or wholly from suffering, it was his duty to take such care."   His duty was to use ordinary care and diligence to lessen the damages.   But the court could not tell the jury what particular acts ordinary care would require him to do. On this subject compare Watson on Damages for Personal Injuries, § 189; Blate *v.* Third Ave. R. R., 44 N. Y. S. C. App. Div. 163; Collins *v.* City of Council Bluffs, 32 Iowa., 324 (3).

8. The grounds of the motion for new trial which excepted to the refusal to permit certain questions to be asked of witnesses do not show what answers were expected or would have been given.

One of them, moreover, appears rather broadly to ask the witness Hilley to give an opinion whether what he did or what others did was unusual and unnecessary. Where, however, the declaration alleged that the jerk complained of was "with great and unusual violence," and this was denied by the answer, evidence on this subject was admissible. *Ball* v. *Mabry*, 91 *Ga.* 782 (4), supra; *City Electric Railway Co.* v. *Smith*, 121 *Ga.* 663.

*Judgment reversed. All the Justices concur, except Candler, J., absent.*